Filed 5/20/22  P. v. Ramirez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B312916 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A380822) |
| v. | |
| WALTER RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Lynne M. Hobbs, Judge.  Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

_____

Walter Ramirez appeals the denial of his Penal Code[1] section 1170.95 petition for resentencing following an evidentiary hearing. Appellant argues the evidence was insufficient to establish beyond a reasonable doubt that appellant was the actual killer or harbored express malice, and his murder conviction must therefore be vacated and the matter remanded for resentencing. We disagree and affirm the denial of the petition under section 1170.95.

## FACTUAL BACKGROUND[2]

On June 27, 1982, Gilbert Morales, Jr. was murdered in an attack by multiple members of the Playboys street gang near the intersection of Vermont Avenue and Beverly Boulevard in the City of Los Angeles.

In June 1982, appellant was a 17-year-old member of the Playboys gang, which had been feuding with the 18th Street gang since about 1975. In the afternoon of June 27, appellant and approximately 10 other members of the Playboys gang were drinking and taking drugs at Griffith Park when some members of the 18th Street gang confronted them. When the rival gang members left to retrieve a gun, the Playboys group moved to another area of the park, and left the park between 5:30 and 6:00 p.m. in two pickup trucks.

Appellant and four other Playboys members were riding in the bed of the truck driven by Pedro Armenta, and another gang member was riding in the front passenger seat. As Armenta was

---

[1] Undesignated statutory references are to the Penal Code.

[2] The factual background is drawn from the preliminary hearing testimony, the autopsy report, and appellant's testimony given at the evidentiary hearing.

driving south on Vermont, someone pointed out Morales, who was believed to be an 18th Street gang member, standing on the southeast corner of Beverly and Vermont. Armenta pulled over, and several of the Playboys gang members jumped out of the truck. Appellant stayed behind as the others ran across the street toward the rival gang member. As Armenta was parking his truck, the other pickup truck arrived, and those gang members joined the group approaching Morales.

A fight broke out between Morales and the Playboys gang members; Armenta saw one person hitting Morales with his fists and another swinging a tire iron at him. Suddenly, Morales broke free and ran across the street straight toward appellant, who was standing on the southwest corner of Beverly and Vermont. As Morales ran toward him, appellant was holding a screwdriver in his fists at chest level with the blade pointed at Morales. Morales did not look up until he was two to three feet from appellant, and appellant took a half step to move into Morales's path. Morales then ran directly into appellant, knocking appellant to the ground. Appellant was still holding the screwdriver in his right hand after he fell.

Morales, who was being chased by other gang members with whom he had been fighting, continued to run and tried to board a bus. When the bus driver did not open the front door, Morales went to the back door, but was soon overtaken by the pursuing Playboys gang members. Morales fell to the ground. One person swung a knife toward Morales's back, another attacked him with a screwdriver, and others punched and kicked him.

As this was taking place, Armenta went to the southwest corner where appellant was still standing and asked him what

was happening. Appellant responded that he had just stabbed the victim.

When people started getting off of the bus, Armenta, appellant, and the other gang members who had driven with Armenta to the scene ran back to Armenta's truck and drove away. Armenta saw appellant the next day. Appellant told Armenta the victim was an 18th Street gang member and may have died at the scene. Appellant suggested Armenta should paint his truck.

The coroner's report identified the cause of Morales's death as multiple stab wounds and described five stab wounds, including one to the upper chest that penetrated the upper lobe of the right lung. The report also noted a superficial incised wound to the posterior left upper arm.

## PROCEDURAL BACKGROUND

On May 25, 1983, appellant pleaded guilty to second degree murder (§ 187), and the trial court sentenced him to a term of 15 years to life.

On June 25, 2019, appellant filed a petition for resentencing under section 1170.95. The trial court found a prima facie showing for relief had been made and issued an order to show cause in accordance with section 1170.95, subdivision (c). The evidentiary hearing took place on May 10, 2021.

The trial court admitted into evidence two preliminary hearing transcripts, the transcript of appellant's plea, and the autopsy report. Appellant testified, claiming no memory of even having a screwdriver, much less using one to stab Morales. In fact, appellant denied causing any injury to Morales at all, but allowed that if he did have a screwdriver, he "probably" stabbed Morales in his left elbow. Appellant also denied any attempt to

4

block or prevent Morales's escape and declared he did not remember telling Armenta he had stabbed Morales. Appellant categorically disavowed any intent to kill Morales.

Following argument, the trial court summarized the facts as framed by the preliminary hearing transcript, stating: "The court relies on the testimony at the preliminary hearing, because that testimony was corroborated in large part by [appellant] when he testified. In fact, none of the testimony was in conflict in any material respect between that of the witness during the preliminary hearing and [appellant] when he testified. [¶] In the particular areas where the preliminary hearing identified [appellant] as committing acts that showed that he was a major participant, [appellant] had no memory. He did not deny the acts. However, [appellant] was able to remember the entire incident with reasonable specificity, even after this amount of years. He was only unable to remember his own actions when it incriminated him."

After considering appellant's testimony together with the documentary evidence submitted, the trial court made its findings: "The court finds after hearing the testimony, watching [appellant] as he testified, that the preliminary hearing testimony regarding [appellant's] actions is true and correct. The court finds this beyond a reasonable doubt. [¶] The court finds that [appellant] was either an aider or abettor, or the actual killer of the victim, Gilbert Morales Jr. The court finds that a reasonable jury could conclude beyond a reasonable doubt that [appellant] acted with express [malice], directly aiding and abetting the murder, or even delivering the wound that caused the victim's death. The natural and probable consequence theory is inapplicable."

Denying the petition, the court ruled that appellant "is unable to show that he could not be convicted of second degree murder due to the changes in Penal Code sections 188 and 189. [Appellant] acted with reckless malice aforethought."

## DISCUSSION
### The Trial Court's Conclusion that Appellant Could Still Be Convicted of Murder and Is Therefore Ineligible for Relief Under Section 1170.95 Is Supported by Substantial Evidence

Appellant contends that the prosecution failed to carry its burden of proving beyond a reasonable doubt that appellant could still be convicted of murder following amendments to California's homicide law effected by Senate Bill No. 1437. (2017–2018 Reg. Sess.) Thus, according to appellant, substantial evidence does not support the trial court's conclusion that appellant was the actual killer or an aider and abettor, and the denial of his 1170.95 petition for resentencing must be reversed.

A. *Applicable legal principals*

Effective January 1, 2019, Senate Bill No. 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 959; *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

To that end, the Legislature amended the natural and probable consequences doctrine by adding subdivision (a)(3) to

6

section 188, which now provides: " 'Except . . . as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, *supra*, 10 Cal.5th at pp. 842–843.) With the addition of section 1170.95, Senate Bill No. 1437 afforded persons previously convicted of felony murder or murder under the natural and probable consequences doctrine a procedure by which to petition the trial court for vacatur of their convictions and for resentencing. (*Gentile*, at p. 853.)

If a petitioner makes a prima facie showing for relief under section 1170.95, the trial court is required to issue an order to show cause and to hold an evidentiary hearing to determine whether to vacate the conviction, recall the sentence, and resentence the petitioner as set forth in the statute. (§ 1170.95, subd. (d)(1).) The burden at that hearing rests with the prosecution "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).)[3]

---

[3] Effective January 1, 2022, Senate Bill No. 775 expanded section 1170.95's scope and amended its procedures. (Stats. 2021, ch. 551.) Among other things, the new legislation requires "the trial court, acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)

**B.** *Standard of review.*

On appeal from a trial court's denial of relief under section 1170.95 following an evidentiary hearing, we review the trial court's determination for substantial evidence. (*Garrison*, *supra*, 73 Cal.App.5th at p. 747.) Under that familiar standard, "we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

Appellant contends that because the trial court relied on a "cold record," we should not defer to the trial court's findings, but should instead conduct an independent review. No. Even if appellant had not testified, the trial court's findings based on the transcripts and other written evidence would have been entitled to no less deference from this court. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711, fn. 3 ["that the trial court's findings were based on declarations and other written evidence does not lessen the deference due those findings"]; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 ["Even though contrary findings *could* have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations"].)

Moreover, contrary to appellant's assertion, the trial court plainly did not make its determination on a "cold record." Rather, the court expressly stated that "after hearing [appellant's] testimony, [and] watching [appellant] as he testified," it found beyond a reasonable doubt that the

8

preliminary hearing testimony describing appellant's conduct was "true and correct." In weighing appellant's live testimony and assessing appellant's credibility—two functions in the exclusive domain of a trial court—the court was highly skeptical of appellant's convenient memory lapses when it came to his own conduct. We are in no position to assess appellant's demeanor and credibility in that regard, and must therefore defer to the trial court's findings.

### C. *Substantial evidence supports the trial court's finding that appellant was either the actual killer or a direct aider and abettor with malice.*

Appellant contends there was no reasonable, solid or credible evidence to support a finding that he was the actual killer or that he knew about and sought to facilitate a murder as a direct aider and abettor. We disagree.

Appellant first maintains there is no evidence to support the trial court's finding he could have been the actual killer, despite his admission to Armenta that he stabbed the victim, and even assuming appellant inflicted one of the multiple stab wounds which resulted in death.[4] Appellant reasons that because there was no evidence that one of the five stab wounds

---

[4] Appellant also asserts that the trial court improperly relied on his guilty plea to find he was the actual killer. Not so. Contrary to appellant's assertion, there is no indication that the trial court considered appellant's plea to second degree murder in concluding he was either the actual killer or an aider and abettor. The court mentioned appellant's plea only in reference to the procedural posture of the case while specifically stating it relied on the testimony at the preliminary hearing, which it found to be credible.

alone would have been fatal, "it would have been impossible for appellant to have been the actual killer." But proof that any one of the five stab wounds alone was fatal was not necessary to establishing appellant's culpability for murder.

As our Supreme Court has explained, "a sharp line does not always exist between the direct perpetrator and the aider and abettor: 'It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator. . . . [O]ne person might lure the victim into a trap while another fires the gun; in a stabbing case, one person might restrain the victim while the other does the stabbing. In either case, both participants would be direct perpetrators as well as aiders and abettors of the other. The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role.'" (*People v. Thompson* (2010) 49 Cal.4th 79, 117–118.) Taking appellant's argument to its logical extreme, if each stab wound was inflicted by a different person and none was fatal by itself, no one could be held responsible for the victim's death. This is obviously not the law.

Appellant next challenges the evidentiary support for the trial court's determination that he was liable for the murder as an aider and abettor, asserting the absence of any evidence that he knew or shared the other gang members' intent to kill the victim.

10

Murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) Malice may be express or implied. (§ 188, subd. (a).) "Express malice requires a showing that the assailant either desires the victim's death or knows to a substantial certainty that the victim's death will occur." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890; *People v. Beltran* (2013) 56 Cal.4th 935, 941 [" 'Express malice is an intent to kill' "].) "[M]alice is implied when the killing resulted from an intentional act, the natural consequences of which are dangerous to human life, performed with knowledge of and conscious disregard for the danger to human life." (*People v. Thomas* (2012) 53 Cal.4th 771, 814.)

Our Supreme Court has "explained that an aider and abettor's guilt 'is based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state.' " (*People v. Perez* (2005) 35 Cal.4th 1219, 1225, quoting *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (*McCoy*).) Establishing aider and abettor liability thus requires three distinct elements of proof: (1) "a crime committed by the direct perpetrator," (2) "the aider and abettor's . . . knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends," and (3) "conduct by the aider and abettor that in fact assists the achievement of the crime." (*Perez*, at p. 1225; *People v. Carrasco* (2014) 59 Cal.4th 924, 968–969.)

While Senate Bill No. 1437 eliminated natural and probable consequences liability for second degree murder based on *imputed* malice, implied malice remains a valid theory of second degree murder liability for an aider and abettor. (*Gentile, supra*, 10 Cal.5th at p. 850 ["an aider and abettor who does not expressly intend to aid a killing can still be convicted of second

11

degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 232 ["In other words, a person may still be convicted of second degree murder, either as a principal or an aider and abettor, 'if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life' "]; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Senate Bill No. 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

The mental state for implied malice murder requires the defendant act with a conscious disregard for life, knowing that her or his conduct endangers the life of another. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Because the "aider and abettor's mental state must be at least that required of the direct perpetrator," in order to prove culpability under an aider and abettor theory, " 'the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." ' " (*McCoy*, *supra*, 25 Cal.4th at p. 1118.) It follows that to aid and abet an implied malice murder, the direct aider and abettor must intentionally commit, encourage, or facilitate life-endangering conduct with knowledge of the perpetrator's purpose and conscious disregard for life. (*Ibid.* & fn. 1.) And "[b]ecause direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts." (*People v. Sanchez* (2016) 63 Cal.4th 411, 457.)

Here, viewing the evidence in the light most favorable to the trial court's findings, substantial evidence supports the conclusion that appellant was the actual killer or a direct aider and abettor with malice. Appellant was present during the confrontation between his fellow gang members and the members of the rival 18th Street gang at the park earlier in the day. Later, at the corner of Beverly and Vermont, appellant watched his compatriots confront Morales, whom they believed to be a member of the rival gang. He saw someone hitting Morales with fists and another Playboys member swinging a tire iron at him. Meanwhile, appellant positioned himself on the southwest corner holding a screwdriver in his fists with the blade pointed outward from his chest. Morales broke free and ran across the street directly toward appellant, with his attackers in close pursuit. Pointing the blade of the screwdriver at Morales, appellant took a half step to block Morales's path. Morales ran directly into appellant and the screwdriver. Moments later, appellant told Armenta he had just stabbed the victim. Although no one witnessed appellant actually stabbing Morales, one of the five stab wounds that resulted in his death was consistent with the inference that appellant had plunged the screwdriver into Morales's upper chest when Morales collided with him.

The trial court found Armenta was a credible witness and observed that appellant's testimony corroborated Armenta's and the other preliminary hearing testimony except as to the one fact that incriminated him: whether he had a screwdriver. But appellant did not deny committing the acts that established his participation in the events which resulted in Morales's death; he simply could not remember whether he had a screwdriver when Morales ran into him. Moreover, appellant admitted that *if* he

13

had a screwdriver, he *probably* stabbed Morales "in the elbow someplace," "in his left arm." And when he was asked what happened to the screwdriver when he fell to the ground, appellant answered, "I still had it, I guess."

To the extent appellant characterizes the evidence differently and asks us to draw a conclusion different than the one reached by the trial court, his argument fails. When considering a challenge to the sufficiency of the evidence, we do not reweigh the evidence or redraw competing inferences from competing circumstances. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055–1056.) " '[O]ur task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might " ' " be reasonably reconciled with the defendant's innocence." ' " ' " (*People v. Veamatahau* (2020) 9 Cal.5th 16, 36.) Indeed, " '[i]f the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 331.)

The trial court's conclusion beyond a reasonable doubt that appellant is guilty of second degree murder as the actual killer or an aider and abettor is supported by substantial evidence. The court properly denied the section 1170.95 petition.

## DISPOSITION

The order of the superior court is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.


CHAVEZ, J.


HOFFSTADT, J.